IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  12-231 (RC) |
| | : | |
| v. | : | |
| | : | |
| JAMES F. HITSELBERGER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITIONTO DEFENDANT'S
MOTION TO DISMISS COUNTS ONE, TWO,
AND THREE OF THE SUPERSEDING INDICTMENT**

**Introduction**

The defendant, James Hitselberger, has filed a motion seeking to dismiss Counts One through Three of the Superseding Indictment on the ground that the underlying statute, 18 U.S.C. § 793(e), is void for vagueness.  His challenge is expressly to the law "as applied" to him.

For several reasons, Hitselberger's motion must fail.  First, every court that has considered similar challenges to § 793(e) and related statutes has rejected them and found the provisions to pass constitutional muster.  Second, although Hitselberger attacks the willfulness requirement in § 793(e) as itself being vague, he completely ignores the well-settled definition of willfulness in this law and the longstanding precedents that a specific intent requirement can cure any putative vagueness that might exist in a statute.  Third, Hitselberger contends that the phrase "relating to the national defense" in § 793(e) is unconstitutionally vague notwithstanding that the Supreme Court and every other court to consider the question has reached the opposite conclusion.  Fourth, he complains about the lack of specificity in the phrase "injury to the United States or to the advantage of any foreign nation," even though that language does not simply does not apply to the charges in the case, which the government has brought under the

"document" clause of § 793(e) as opposed to the intangible "information" clause of the statute. Finally, the facts of this case as applied to Hitselberger – a government contractor with a secret security clearance who signed a classified information nondisclosure agreement, worked in a secure facility, and twice in a nine-month period underwent training on the proper handling of classified information – demonstrate that he had clear notice and fair warning that the conduct in which he engaged violated the law.

## Background

The facts underlying this prosecution have been set forth in greater detail in other pleadings. The information most pertinent to this motion is the following:

In June 2011, Hitselberger took a position as a linguist with Global Linguist Services (GLS), a government contractor located in Reston, Virginia. After being hired by GLS, as a condition of receiving a security clearance and access to classified U.S. government information, he underwent training on the different types of classified information and on the proper handling of such materials. During his training, Hitselberger also was instructed and acknowledged that information classified at the Secret level could cause grave damage to the national security of the United States and that information classified at the Confidential level could cause damage to the United States. At the end of his training, he signed a form confirming that "I also understand I could be subject to action under the espionage statutes of Federal Law with respect to my failure to handle or deliberate mishandling of classified information." *See* Exhibit 3 to the Government's Memorandum in Support of Detention (Docket 13). On August 27, 2011, Hitselberger signed a Non-Disclosure Agreement in which, among other things, he acknowledged:

> I agree that I shall return all classified materials which have or may come into my possession or for which I am responsible because of such access: (a) upon demand by an

>authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information.  If I do not return such materials upon request, I understand that this may be a violation of Section 793 and/or 1924, Title 18, United States Code, a United States criminal law.

*See* Exhibit 4 to the Government's Memorandum in Support of Detention (Docket 13) at ¶ 7.  At that time, he received an interim Secret-level clearance, which became permanent in January 2012.  Additionally, Hitselberger previously had a security clearance when he worked as a contract linguist for the Army in Iraq from 2004-2007.

In September 2011, Hitselberger was assigned to the Naval Support Activity – Bahrain (NSA Bahrain), where he served as a linguist for the Joint Special Operations Task Force (JSOTF), Naval Special Warfare Unit Three (NSWU-3).  His workplace was in a Restricted Access Area (RAA), which was configured for the storage and handling of classified information.  Significant security measures were in place at this location, including cipher locks on its reinforced doors and contained safes for storing classified materials.  In addition, there were computer terminals with access to the military's Secret-level computer network, the Secret Internet Protocol Router Network (SIPRnet).  During his time with the JSOTF, Hitselberger attended regular security briefings in the RAA at which there were frequent reminders about the proper handling of classified information, including the security requirement that classified information must not be removed from the RAA.

On April 11, 2012, two of Hitselberger's supervisors observed him access and print two classified documents from his SIPRnet account.  They then watched him conceal the documents in a dictionary, which he placed in a backpack.  Hitselberger took the backpack and left the RAA.  Hitselberger was not authorized to remove classified information from the RAA under

any conditions, let alone secreted in a backpack. One of the supervisors and Hitselberger's commanding officer followed him. They continued following him as he left the building that housed the RAA. A short distance from the building, the supervisor and commanding officer asked Hitselberger to stop. They asked him to produce the materials he had printed. Hitselberger first took out only one classified document from inside the dictionary. When his supervisor asked what else he had, Hitselberger finally surrendered the second classified document.

One of the two documents the defendant removed from the RAA was that day's JSOTF Situation Report (SITREP) (SITREP 104). It has **SECRET//NOFORN** in red, bold type (all capitals) in the header and footer of each page. On the first page of the document, and continuing on to the second page, is a multi-paragraph portion marked **(S//NF)**. It contains an analyst's assessment of the availability of certain improvised explosive devices in Bahrain. Elsewhere in the document, in portions marked **(S)**, are the schedule for the monthly travel of a high-ranking commander at Naval Support Activity-Bahrain and information about the locations of U.S. armed forces in the region and their activities over the previous twenty-four hours. The second document was a Navy Central Command (NAVCENT) Regional Analysis dated April 9, 2012. It bears the following header and footer on each page: **SECRET//REL TO USA, FVEY**.[1] On the third page of the document are five bullet points, marked **(S//REL)**, discussing gaps in U.S. intelligence concerning the situation in Bahrain, which, at the time, was volatile. Hitselberger's illegal retention of these two documents underlies the § 793(e) charge in Count One of the Superseding Indictment.

---

[1] REL is an abbreviation for "releasable to." FVEY is an abbreviation for a group of allied nations known as the "Five Eyes," which are the United States, the United Kingdom, Canada, Australia, and New Zealand.

Later in the day on April 11, 2012, agents from the Naval Criminal Investigative Service (NCIS) searched Hitselberger's quarters. On the top of Hitselberger's desk, they discovered a document that appeared to be classified. The top and bottom of the document had been cut off, effectively removing the classification markings in the header and footer of the document, which concealed its overall classification. The page of the document in Hitselberger's room still had the individual paragraph classification markings, which revealed the paragraphs of the page were classified at the Confidential level. These paragraphs contained an intelligence analyst's assessment of the situation in Bahrain, which has experienced recent civil unrest, and revealed that a certain sensitive military entity was focusing on these events. The agents were able to learn that the document in question was JSOTF SITREP 72 (SITREP 72) from March 8, 2012. The complete SITREP is five pages long and has **SECRET** in red in the headers and footers. Like SITREP 104, it contains highly sensitive information about the location of U.S. forces and their undisclosed activities in the region. Hitselberger's illegal retention of SITREP 104 underlies the § 793(e) charge in Count Two of the Superseding Indictment.

As the investigation of Hitselberger continued, agents learned of a collection he had established – the "James F. Hitselberger Collection" – at the Hoover Institute located at Stanford University. In a public portion of the Institute's library, agents found a classified document titled Bahrain Situation Update dated February 13, 2012. It is officially classified as **SECRET//REL ACGU**.[2] Like the NAVCENT Regional Analysis found in Hitselberger's backpack, it has a section that discusses gaps in U.S. intelligence with respect to the political situation in Bahrain. It does not have classification markings in the headers and footers, but each classified paragraph is marked Secret. Hitselberger received the document as an attachment to a group e-mail sent on February 13, 2012. Based on e-mail correspondence and mailing records, Hitselberger sent it to

---

[2] "ACGU" means that the document is releasable to Australia, Canada, Great Britain, and the United States.

the Hoover Institute some time between March 17, 2012, and April 4, 2012.  His illegal retention of the Bahrain Situation Update underlies the § 793(e) charge in Count Three of the Superseding Indictment.

## Governing Legal Principles

### A. 18 U.S.C. § 793(e)

Section 793(e) has two different clauses:  it criminalizes the willful transmission or retention of documents, writings, or other tangible items relating to the national defense (the "document" clause) and the willful transmission or retention of information relating to the national defense (the "information" clause).[3]  With respect to the "information" prong, the statute has an additional *mens rea* element that the defendant must have "reason to believe [the information] could be used to the injury of the United States or to the advantage of a foreign nation."  18 U.S.C. § 793(e).  The statute imposes no such requirement on a defendant who, like Hitselberger here, has been charged with transmitting or retaining tangible items such as documents or writings.

Every court to consider the issue has come to the same conclusion about the plain meaning and grammatical structure of § 793(e).  Most recently, in *United States v. Aquino*, 555 F.3d 124 (3d Cir. 2009), the Third Circuit reviewed the sentence of a defendant who had pled guilty to violating § 793(e) by illegally retaining two classified documents.  555 F.3d at 126.  In entering his plea, Aquino stated that he had reason to believe the documents could be used to

---

[3]  Section 793(e), set forth in full, states:

> Whoever having unauthorized possession of, access to, or control over any *document*, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense *which information* the possessor has reason to believe could be used to the injury of the United States or to the advantage of a foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee entitled to receive it."  (Emphasis added)

6

injure the United States or aid a foreign government. *Id*. As a result of that admission, the district court applied the more severe of two guidelines sections covering convictions under § 793(e) – that is, the district court applied Guideline Section 2M3.2, based on the commentary that it encompasses defendants who act with "reason to believe the information would injure the United States or be used to the advantage of a foreign government." U.S.S.G. § 2M3.3, Comment. Otherwise, the district court would have applied § 2M3.2. The Court of Appeals, in vacating the sentence, held that the defendant's admission as to his "reason to believe" a potential injury to the United States or an advantage to a foreign power was "mere surplasage":

> Section 793(e) differentiates between "tangible" information, *i.e.*, the laundry list of items in the statute and "intangible" information, *i.e.,* knowledge. For intangible information, the government must also prove *mens rea*: that "the possessor has reason to believe [the intangible information] could be used to the injury of the United States or to the advantage of any foreign power. 18 U.S.C. § 793(e). The House Committee, in its report on § 793(e) in connection with the 1950 revision of the Espionage Act, explained that this qualifying language addressed concerns that the category of illegally communicated intangible information was potentially overbroad. H.R.Rep. No. 647, 81st Cong., 1st Sess. (1949), at 4. The Committee left it to the courts to define this limiting phrase on a case-by-case basis, but stressed that the "qualification [was] *not intended* to qualify the other items enumerated in the subsections." *Id.* (emphasis added). Accordingly, the government must address the limiting phrase only where the information at issue is intangible.

555 F.3d at 131 n.13 (internal case citations omitted). *See also New York Times Co. v. United States*, 403 U.S. 713, 738 (White, J., concurring) ("It seems clear . . . that in prosecuting for communicating or withholding a 'document' as contrasted with similar action with respect to 'information' the Government need not prove an intent to injure the United States or to benefit a foreign nation, but only willful and knowing conduct."); *United States v. Kiriakou*, -- F.Supp.2d --, 2012 WL 4903319 (E.D.Va. October 16, 2012), at *1 ("Importantly, § 793(d) differentiates between 'tangible' [national defense information (NDI)], described in the "documents" clause . . . and "intangible" information NDI, described in the "information" clause . . . Although

disclosure of either form of NDI is criminal only if the [defendant] acts "willfully," the statute imposes an additional scienter requirement when intangible NDI is at issue.")[4]; *United States v. Drake*, 818 F. Supp.2d 909, 918 (D.Md. 2011) ("Thus, in a case such as this one [a prosecution under § 793(e)] that involves solely the willful retention of classified *documents*, not intangible *information*, there is no heightened mens rea requirement.") (emphasis in the original); *United States v. Rosen*, 445 F. Supp.2d 602, 626 ("[I]t is clear from both the text and the legislative history that this additional scienter requirement applies only to the communication of intangible 'information,' and is intended to heighten the government's burden when defendants are accused of communicating intangible information."); *United States v. Morison*, 622 F. Supp. 1009, 1011 (D.Md. 1985).

Counts One through Three of the Superseding Indictment charge Hitselberger under the "document" clause of § 793(e). Accordingly, the "reason to believe" requirement is not an element of the offense here.

## B. The Void-for-Vagueness Doctrine

Under the void-for-vagueness doctrine, a statute that criminalizes conduct "must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Nevertheless, a court "cannot forget that language is unavoidably inexact and that statutes cannot, in reason, define proscribed behavior exhaustively or with consummate precision." *United States v. Thomas*, 864 F.2d 188, 195 (D.C. Cir. 1988) (citation omitted). A statute is "fatally vague only when it exposes a

---

[4] Section 793(d) is virtually identical to § 793(e), except that the former subsection applies when the defendant has lawful possession or control of the national defense information, as opposed to § 793(e), where the defendant has unauthorized possession or control of the national defense information. *See also United States v. Kim*, 808 F. Supp.2d 44, 52 n.2 (D.D.C. 2011).

potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct." Rather, all that the Due Process Clause requires is "that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *Buckley v. Valeo*, 424 U.S. 1, 77 (1976). Indeed, it is often sufficient that the proscription mark out only "*the rough area* of prohibited conduct." *Thomas*, 864 F.2d at 194 (emphasis added). While the Due Process Clause "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior decision has fairly disclosed to be within its scope," *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citations omitted), "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *Id.*

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Supreme Court, in considering a vagueness challenge to a zoning ordinance, observed that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." 455 U.S. at 499. *See also Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) ("[S]cienter requirements alleviate vagueness concerns.").

In the criminal context, the Court has held:

> [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge the act which he does is a violation of the law. The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

*Screws v. United States*, 325 U.S. 91, 102 (1945). *See also United States v. Maude*, 481 F.2d 1062, 1069 (D.C. Cir. 1973) ("A good deal of ambiguity can be dissipated when 'the statute adds as a condition that the conduct is criminal only in case the accused knows that what he intends is

9

wrong.'") (citation omitted); *United States v. Hescorp Heavy Equipment Sales Corp.*, 801 F.2d 70, 77 (2d Cir.), *cert. denied*, 479 U.S. 1018 (1986) ("[A] requirement of willfulness makes a vagueness challenge especially difficult to sustain.").

Finally, under an as-applied challenge, like the one the defendant makes here, a statute must be examined only in light of the facts of the case at hand. *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2720 (2010); *Thomas*, 864 F.2d at 198. This means that the reviewing court need only determine "the existence of the actual notification" to the defendant of the prohibited conduct which would demonstrate "fair notice that the [law] applied to [his] contemplated conduct." *Thomas*, 864 F.2d at 198.

## Argument

### A.  The Term "Willfully" in § 793(e) Is Not Unconstitutionally Vague

Notwithstanding clear precedent from the Supreme Court and the D.C. Circuit that a willfulness element can cure any purported vagueness in a criminal statute, Hitselberger asserts that the term "willfully" in § 793(e) is itself impermissibly vague. Defendant's Motion to Dismiss (Motion) at 6-10. The government is aware of no case that has held that a statute's use of the term "willful" or "willfully" is vague. Hitselberger cites to none.

Recently, the defendant in *Drake* made the same faulty argument as Hitselberger makes here. *See* 818 F. Supp.2d at 916. As in this case, the defendant in *Drake* was charged with illegally retaining classified information in violation of § 793(e). *Id*. at 912. The district court rejected the defendant's claim that the term willfulness is unconstitutionally vague. *Id.* at 916-18. In particular, the court adopted the definition of willfulness the Supreme Court articulated in

*Bryan v. United States*, 524 U.S. 184 (1998)[5] and determined that courts in the Fourth Circuit have consistently applied the standard in cases arising under the Espionage Act, particularly in cases alleging violations of the document clause of § 793(e).  *Id*. at 918.  *See also United States v. Morison*, 844 F.2d 1057, 1071-73 (4th Cir. 1988) (use of the term willful not unconstitutionally vague).

In *Kim*, a prosecution for the illegal transmission of classified information under 18 U.S.C. § 793(d), Judge Kollar-Kotelly also adopted *Bryan*'s willfulness standard and ruled that the willfulness element precluded a finding that the statute was unconstitutionally vague.  808 F. Supp.2d at 53-54.  "Because the government must prove that Defendant knew his conduct was unlawful, he cannot complain that he did not have fair warning that he could be criminally prosecuted for his actions."  *Id*. at 54.

Although Hitselberger contends that there is no *mens rea* standard that would be constitutionally sufficient for § 793(e), he hints that the Court might consider importing the scienter requirement set forth in the Supreme Court's decision in *Gorin v. United States*, 312 U.S. 429 (1941).  *See* Motion at 7-10.  *Gorin* was a prosecution for the illegal transmission of national defense information in violation of the predecessor statute to the current Espionage Act.  As discussed more fully below, the Court in *Gorin* rejected a vagueness challenge to the phrase "relating to the national defense," which is used both in the predecessor statute and in the current statute.  312 U.S. at 28.  The *mens rea* standard in the statute at issue in *Gorin* was simply different from that in § 793(e).  It required that the defendant act with "intent or reason to believe that the information to be obtained is to be used to the injury of the United States or to the advantage of any foreign nation."  *Id*. at 21, n.1.

---

[5]  In *Bryan*, the Supreme Court held that "in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'"  524 U.S. at 192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

However, even under this higher scienter standard, the Supreme Court did not hold that such subversive intent *was required* for the statute to survive the Due Process challenge or for the "relating to the national defense" language to withstand a vagueness attack. Rather, the Court held, as it had in prior cases, that an intent element associated with the proscribed conduct undercuts any vagueness concerns in the language of the statute. *Id.* at 27. Furthermore, following *Gorin*, no court has held that the precise subversive scienter requirement at issue in *Gorin* was *necessary* to overcome vagueness challenges to other sections of the Espionage Act. *See*, *e.g.*, *United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978) (holding that "knowledge of a document's illegal abstraction" was sufficient to overcome vagueness challenge to Section 793(f)); *United States v. Morison*, 604 F. Supp. 655, 659 (D.Md. 1985). As referenced above, the Fourth Circuit in *Morison*, 844 F.2d at 1071, rejected a vagueness challenge to Section 793(d) based in part on its "willfulness" scienter requirement. Indeed, properly defined, a "willfulness" scienter requirement more directly addresses vagueness concerns than the subversive scienter requirement at issue in *Gorin*, because only the former requires the United States to demonstrate that the defendant knew that his actions were unlawful.

Hitselberger also inaptly suggests that the Court might consider adopting *Rosen*'s gloss to the "reason to believe" *mens rea* element in the "information" clause of § 793(e) – that is, that the government must also show "the defendant's bad faith purpose to either harm the United States or to aid a foreign government." Motion at 7-9, 18-19. *See Rosen*, 445 F. Supp.2d at 626.[6] However, again, *Rosen* makes clear that the added scienter requirement only applies to the

---

[6] It is worth noting that the validity of *Rosen*'s gloss on the "reason to believe" element is not clear. In an interlocutory appeal the government brought during the litigation in *Rosen* pursuant to Section 7 of the Classified Information Procedures Act, 18 U.S.C. App. III, one of the issues the government raised was whether it was required to prove that the defendants specifically intended to injure the United States. Although the Fourth Circuit found it lacked jurisdiction to consider the improvised element, the court did express concern "by the potential that the § 793 Order imposes an additional burden on the prosecution not mandated by the governing statute." *United*

12

intangible "information" clause of §§ 793(d) and (e). *Id*. Thus, even under *Rosen*, the heightened *mens rea* element would not be necessary in a prosecution, like this one, under the "document" clause of § 793(e) for the illegal retention of classified written materials.

### B. The Term "Relating to the National Defense" in § 793(e) Is Not Unconstitutionally Vague

*Gorin* disposes of Hitselberger's claim (Motion at 10-13) that the phrase "relating to the national defense" is impermissibly vague. The Court expressly found that "[t]he language employed appears sufficiently definite to apprise the public of prohibited activities and is consonant with due process." 312 U.S. at 28.

The continued vitality of *Gorin*'s holding has been recognized by many courts, including in cases involving charges brought under Section 793. *See Kim*, 808 F. Supp.2d at 52-55; *United States v. Squillacote*, 221 F.3d 542, 580 n.23 (4th Cir. 2000); *Morison*, 844 F.2d at 1070-1073; *Dedeyan*, 584 F.2d at 39; *United States v. Boyce*, 594 F.2d 1246, 1252 n. 2 (9th Cir. 1979) (upholding the language of Sections 793 and 794); *Drake,* 818 F. Supp.2d at 918-19; *United States v. Abu-Jihaad*, 600 F. Supp.2d 362, 385 (D.Conn. 2009); *Rosen*, 445 F. Supp. 2d at 617-22. Conversely, no court has ever found the phrase "relating to the national defense" to be unconstitutionally vague in any context. Accordingly, the defendant's vagueness challenge to this phrase in Section 793(e) should be rejected.

### C. Hitselberger Cannot Challenge the Phrase "Injury to the United States or to the Advantage of any Foreign Nation" Because It Is Not an Element of the Offense He Is Charged with Committing

As set forth above, the *mens rea* requirement of "reason to believe [the information] could be used to the injury of the United States or to the advantage of any foreign nation" does not apply to a defendant charged under the "document" clause of § 793(e) with illegally retaining

---

*States v. Rosen*, 557 F.3d 192, 199 n.8 (4th Cir. 2009). *See also Kiriakou*, 2012 WL 4903319 at *3-4 (questioning *Rosen*'s gloss).

written materials containing national defense information. Accordingly, Hitselberger lacks standing to challenge this provision of the statute on vagueness grounds or otherwise. *Village of Hoffman Estates*, 455 U.S. at 495. *See also Drake*, 818 F. Supp.2d at 919 (rejecting the same challenge Hitselberger is raising here because the "'to the injury of the United States or to the advantage of any foreign nation' phrase does not apply to prosecutions of individuals charged with providing *documents* relating to the national defense.") (emphasis in the original).

In the portion of the motion in which Hitselberger raises this claim, he also asserts for the first time that § 793(e) violates the First Amendment. *See* Motion at 15-16. Such an overbreadth claim is inconsistent with his assertion at the outset of the motion that he is only making an "as applied" challenge to the statute.[7] In any event, Hitselberger has no First Amendment claim here. He did not engage in any form of speech. This is a retention case. His taking and keeping the classified records that he accessed in and removed from the RAA involves no expressive conduct. Unlike the defendant in *Drake* – who also was not accorded First Amendment protection for his actions – Hitselberger does not style himself as a "whistleblower." Moreover, even if Hitselberger claimed some First Amendment conduct in his illegal retention of classified documents, his attack on the statute would still fail. As the Supreme Court held in *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949), speech integral to a crime is undeserving of First Amendment protection. The Court stated: "It has rarely been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now." 336 U.S. at 498. *See also Kim*, 808 F. Supp.2d at 56 (in prosecution of defendant under § 793(d)

---

[7] "The overbreadth doctrine prohibits the government from proscribing a 'substantial' amount of constitutionally protected speech." *United States v. Adams,* 343 F.3d 1024, 1034 (9th Cir. 2003), *cert. denied*, 542 U.S. 921 (2004).

for leaking classified information to a reporter, court rejects First Amendment overbreadth challenge to the statute).

### D. The Facts of this Case, as Applied to Hitselberger's Conduct, Demonstrate that He Had Fair Warning that His Retention of Classified Documents Was Illegal

Hitselberger claims that he lacked fair notice that his conduct was unlawful, and he seeks to distinguish himself from defendants such as Morison who were longtime employees in the Intelligence Community. Motion at 4-5. His attempt to distinguish himself from these individuals and to ignore all the experiences that revealed the illegal nature of his behavior must fail.

In *Morison,* the court further supported its conclusion that the prosecution was consistent with due process by invoking the defendant's experience with national defense matters: "He was an experienced intelligence officer. He had been instructed on all the regulations concerning the security of national defense materials." 844 F.2d at 1073. Similarly, in *Kirakou*, the district court found the defendant had fair warning of the illegality of his conduct by virtue of his work in the intelligence community: "Specifically, Kiriakou was a government employee trained in the classification system who could appreciate the significance of the information he allegedly disclosed. Accordingly, there can be no question that Kiriakou was on clear notice of the illegality of his alleged communications." 2012 WL 4903319 at *3-4. Finally, in *Kim*, Judge Kollar-Kotelly emphasized the nature of the materials to which the defendant had access: "Defendant's vagueness challenge is particularly unpersuasive in light of the fact that he is charged with disclosing the contents of an intelligence report concerning intelligence sources and/or methods and intelligence about the military capabilities and preparedness of a foreign nation and which was marked TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION, a classification level that was applied to information, 'the unauthorized

15

disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security.'" 808 F. Supp.2d at 53.

Although Hitselberger admittedly was not a career intelligence professional, he has more in common with defendants such as Morison, Kiriakou, and Kim than he lets on. He worked in a Restricted Access Area, which was located on a military base in a volatile part of the world. The physical space had cipher locks on the doors and safes inside for the storage of records. There were computers with access to a secure, Secret-level computer network. Within a nine month period, Hitselberger twice underwent indoctrination on the proper storage and handling of classified information, and received instruction that it was prohibited to remove classified documents from the secure space. He attended regular security briefings. Hitselberger had a security clearance and had signed a non-disclosure agreement in which acknowledged he could be prosecuted under the very statute at issue here for mishandling classified materials. The documents he took on April 11, 2012, were marked Secret in bold, red letters, and the classified paragraphs were marked. Hitselberger had removed the classification header and footer from the document found in his room. These facts combine to establish convincingly that there is no due process violation in prosecuting Hitselberger under § 793(e) for his unauthorized retention of written materials containing national defense information.

### E. Discussion of Jury Instructions Is Premature

Perhaps acknowledging that, based on undisputed law, he is unlikely to succeed in his vagueness challenge to the § 793(e) charges, Hitselberger seeks, in the alternative, jury instructions with particular definitions of the elements of § 793(e). Motion at 17-19. The government believes it is premature to begin formulating the jury instructions. At the appropriate time, it will submit instructions with all supporting authorities. Thus, the

government is not in a position to respond to all of the requested language and definitions Hitselberger seeks. It will note, however, that to the extent he is asking the Court to adopt the modified "reason to believe" language from *Rosen* or to graft onto the "document" clause of § 793(e) the *mens rea* element applicable only to the "information" clause, it objects for all the reasons set forth above as to why both the "reason to believe" requirement and *Rosen*'s gloss on it are inapplicable here.

## Conclusion

For the foregoing reasons, the Court should deny the defendant's motion to dismiss Counts One through Three of the Superseding Indictment.

          Respectfully submitted,

          RONALD C. MACHEN JR.
          UNITED STATES ATTORNEY

By:

          _____/s/_____
          JAY I. BRATT
          Assistant United States Attorney
          National Security Section
          555 4th Street, NW, 11th Floor
          Washington, D.C.  20530
          (202) 252-7789
          Illinois Bar No. 6187361
          jay.bratt2@usdoj.gov

          MONA N. SAHAF
          Assistant United States Attorney
          National Security Section
          555 4th Street, NW, 11th Floor
          Washington, D.C.  20530
           (202) 252-7080
          D.C. Bar 497854
          mona.sahaf@usdoj.gov

          DEBORAH CURTIS
          Trial Attorney
          Counterespionage Section

National Security Division
U.S. Department of Justice
600 E Street, NW, 10th Floor
Washington, D.C.  20530
(202) 233-2113
deborah.curtis@usdoj.gov

**Certificate of Service**

    I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Memorandum in Opposition to Defendant's Motion to Dismiss Counts One, Two, and Three of the Superseding Indictment by ECF on Mary Petras, Esq., counsel for defendant, this 5th day of April, 2013.

                                               _____/s/_____
                                                  Jay I. Bratt