UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 12-cr-231 (RC) |
| | : | |
| JAMES F. HITSELBERGER, | : | Re Document No.: 36 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DENYING DEFENDANT'S MOTION FOR DECLARATION THAT SECTIONS 5 AND 6 OF THE
CLASSIFIED INFORMATION PROCEDURES ACT ARE UNCONSTITUTIONAL

**I. INTRODUCTION**

Defendant, Mr. Hitselberger, has been charged by the United States of America on three counts of violating 18 U.S.C. Section 793(e), for knowingly removing and retaining classified information from a secure location. He has also been charged on three counts of violating 18 U.S.C. 3238, for unlawfully removing public documents from their secured location. Prior to trial, Mr. Hitselberger is required, under the Classified Information Procedures Act ("CIPA") 18 U.S.C. App. III Section 5, to notify and briefly describe to the Government and the court any classified information that the defense is likely to disclose during the trial. Furthermore, Mr. Hitselberger may be obligated, under Section 6 of the same provision, to explain the use and relevance of previously disclosed classified information in a hearing before this Court. If Mr. Hitselberger fails to comply with these provisions, disclosure of the classified information may be precluded. Mr. Hitselberger now challenges Sections 5 and 6 of CIPA as violating (A) his Fifth Amendment right not to be penalized for his pretrial silence and Fifth and Sixth Amendment rights to testify in his own defense; (B) his Sixth Amendment right to confront and cross-examine witnesses against him; and (C) his Fifth Amendment right to due process of law.

## II. FACTUAL BACKGROUND

James Hitselberger is a 56-year-old linguist. He is fluent in Arabic, Farsi, and Russian. In June 2011, he was hired by Global Linguist Solutions, which assigned him to work for the United States Navy at a base in Bahrain. Mr. Hitselberger regularly worked with classified information. The Government alleges that on April 11, 2012, two supervisors observed Mr. Hitselberger checking his email in a Restricted Access Area and then printing multiple pages clearly marked as SECRET from a SECRET printer. Compl. ¶¶12-13, Aug. 6, 2012, ECF No. 1. This information contained sensitive troop information and intelligence analysis. Compl. ¶12. The Government contends that Mr. Hitselberger was then observed taking the classified documents from the printer and placing them into an Arabic-English Dictionary and attempted to leave the building with the SECRET documents. *Id.* Mr. Hitselberger was stopped by a supervisor and his commanding officer after exiting the building. *Id.* On April 11, 2012, NCIS Special Agents conducted a Command Authorized Search and Seizure of Mr. Hitselberger's living quarters in Bahrain. Compl. ¶13. Inside, Special Agents found documents classified as SECRET with the SECRET warning label cut off the top and bottom of the pages. Compl. ¶14. After investigation, it was determined that Mr. Hitselberger received the documents as an e-mail attachment sent to several persons on a distribution list. *Id.* The Government now brings an action against Mr. Hitselberger for three counts of unlawfully removing and retaining classified information from a secure location, in violation of 18 U.S.C. Section 793(e), and three counts of unlawfully removing public documents from their secured location, in violation of 18 U.S.C. Section 3238.

## III. ANALYSIS

Mr. Hitselberger contends that CIPA Sections 5 and 6 are unconstitutional as applied in this case. Section 5 requires a defendant to provide notice to the United States and this court if he or she "reasonably expects to disclose or cause the disclosure of classified information." 18 U.S.C. App. III Section 5(a). Section 6 provides for a pre-trial hearing, upon the request of the United States, to determine the use, relevance or admissibility of the classified information that would otherwise be disclosed during the criminal trial. 18 U.S.C. App. III Section 6(a). Mr. Hitselberger contends that these provisions: (A) violate his Fifth Amendment right not to be penalized for his pretrial silence and Fifth and Sixth Amendment rights to testify in his own defense; (B) violate his Sixth Amendment right to confront and cross-examine witnesses against him; and (C) violate his Fifth Amendment right to due process of law.

Congress enacted CIPA in 1980 in order to respond to the "graymail" problem arising in national security prosecutions involving classified information. As Judge Greene explains in *United States v. Pointdexter*, 725 F. Supp. 13, 31-32 (D.D.C. 1989):

> [T]he so-called "graymail" problem—the problem of defendants in criminal cases threatening to introduce classified information at trial…confront[ed] the government with the choice between permitting highly sensitive national security information to become publicly known, on the one hand, and capitulating to the graymail by dismissing the charges, on the other.

CIPA thus includes provisions, such as Sections 5 and 6, in order to provide the government with notice of the type and basic content of classified information which may be disclosed at trial. Still, Congress was careful to highlight the defendant's continued and important right to a fair trial, thus creating a statutory framework carefully balancing both the government's and the defendant's interests. *Id. See also*, H.R. Rep. No.96-831, Pt.1, 96th Cong., 2d. Sess. (1980); S.Rep. No. 96-823, 96th Cong., 2d Sess. (1980); *United States v. Pappas*, 94 F.3d 795, 799-803 (2d. Cir. 1996); *United States v. Libby*, 453 F.Supp.2d 35, 37 (D.D.C. 2006) (CIPA was designed

"to reconcile, on the one hand, a criminal defendant's right to obtain prior to trial classified information and introduce such material at trial, with, on the other hand, the government's duty to protect from disclosure sensitive information that could compromise national security.")

Given CIPA's careful balancing, it is unsurprising that every court to consider the issue, including the D.C. Circuit, has rejected Fifth and Sixth Amendment challenges to CIPA's pre-trial discovery rule. *See United States v. Yunis,* 924 F.2d 1086, 1094–95 (D.C.Cir.1991) (CIPA "'creates no new rights of or limits on discovery' of classified material, but only requires courts to consider secrecy concerns when applying general discovery rules."). *See also, United States v. Wilson,* 750 F.2d 7 (2d Cir.1984); *United States v. Wilson,* 721 F.2d 967, 976 (4th Cir.1983); *United States v. Drake*, 818 F.Supp.2d 909 (D.Md. 2011); *United States v. Lee,* 90 F.Supp.2d 1324, 1326–27 (D.N.M. 2000); *United States v. Ivy,* No. Crim. A. 91–00602–04, 1993 WL 316215, at *3 (E.D.Pa. Aug. 12, 1993); *United States v. Pointdexter*, 725 F. Supp. 13 (D.D.C. 1989). The court keeps this in mind as it turns to Mr. Hitselberger's specific arguments.

**A. CIPA does not violate Mr. Hitselberger's Fifth Amendment right against self-incrimination.**

Mr. Hitselberger contends that the notice and hearing requirements of CIPA Sections 5 and 6 violate his Fifth Amendment privilege against self-incrimination because they force him to reveal classified aspects of his own potential trial testimony and would damage his ability to present an effective defense. This, defendant argues, infringes on his right to remain silent until and unless he decides to testify. Defendant's reasoning is flawed.

First, Sections 5 and 6 of CIPA do not require a defendant to specify what he will testify about or even whether he will testify. "The statute requires merely a general disclosure as to what classified information the defense expects to use at the trial, regardless of the witness or the

4

document through which that information is to be revealed." *United States v. Pointdexter*, 725 F. Supp. 13, 33 (D.D.C. 1989); *See also United States v. Drake*, 818 F.Supp.2d 909, 914 (D.Md. 2011); *United States v. Hashmi*, 621 F.Supp.2d 76, 81(S.D.N.Y. 2008) ("The potential of precluding the disclosure [under CIPA] does not amount to a 'penalty' for the defendant's exercising of his right to remain silent."); *United States v. Lee,* 90 F.Supp.2d 1324, 1327 (D.N.M 2000) (finding that CIPA does not require a defendant to specify whether or not he will testify and that the defendant maintains an option to remain silent regardless of CIPA disclosures); *United States v. Ivy*, 1993 WL 316215 at *4 (E.D.Pa. 1993) (same). In essence, CIPA's disclosure requirements only govern pre-trial evidentiary disclosures, as opposed to testimonial disclosures. And mere evidentiary disclosures do not violate a defendant's Fifth Amendment right to remain silent. *See United States v. Nobles*, 422 U.S. 225, 233, n.7 (1975) ("the constitutional guarantee [against self-incrimination] protects only against forced individual disclosures of a '*testimonial or communicative nature.*'"). Moreover, CIPA's disclosure requirements neither require the defendant to use the disclosed evidence at trial, nor take the stand and testify on his own behalf if he does not wish to do so.

Second, there are many other instances in which defendants have been required to disclose elements of their defense prior to trial. *See Drake*, 818 F.Supp.2d at 913; *Hashmi*, 621 F.Supp.2d at 81; *Lee*, 90 F.Supp.2d at 1327; *Ivy,* 1993 WL 316215 at *3; *Pointdexter*, 725 F. Supp. at 33. Examples include Fed. R. Crim. P. 12.1 (alibi defense); Fed.R.Crim.P. 12.2 (insanity defense); Fed.R.Crim.P. 12.3 (public authority defense); Fed.R.Crim.P. 16 (medical and scientific tests, and tangible objects, and certain documents). These sorts of provisions have consistently been held to be constitutional. *Williams v. Florida*, 399 U.S. 78, 83 (1970); *Taylor v. Illinois*, 484 U.S. 400, 407 (1988).

Mr. Hitselberger relies on *Brooks v. Tennessee*, 406 U.S. 605 (1972), to argue that CIPA's disclosure requirement either requires Mr. Hitselberger to disclose potentially incriminating evidence, and thus compels his testimony, or penalizes Mr. Hitselberger by foreclosing use of the undisclosed evidence later in his criminal trial. The Supreme Court in *Brooks* struck down a Tennessee state law requiring defendants to testify first during their case in chief, or to not testify at all. The *Brooks* court held that a defendant has the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty…for such silence." *Brooks v. Tennessee*, 406 U.S. 605, 609 (citing to *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). This rule violated the Fifth Amendment because it "cut[ ] down on the privilege (to remain silent) by making its assertion costly." *Id.* at 610 – 611 (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)).

Mr. Hitselberger's reliance on *Brooks* is too expansive. "The leap from the requirement of disclosure – similar to the disclosure of an alibi or insanity defense – to a violation of a defendant's right to testify or not to testify is too wide to be justified." *United States v. Pointdexter*, 725 F.Supp. 13, 34 (D.D.C. 1989); *See also Drake*, 818 F.Supp.2d at 913; *Hashmi*, 621 F.Supp.2d at 82; *Lee*, 90 F.Supp.2d at 1327; *Ivy,* 1993 WL 316215 at *4. In *Brooks*, the Court was primarily concerned with preserving the defendant's free choice to take the stand during his trial. As the Court notes, "[p]ressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of ensuring his honesty." *Brooks*, 406 U.S. at 611-612. While CIPA's pre-trial disclosure requirement could hamper Mr. Hitselberger's *desire* to testify at trial, it does not, foreclose his *choice* to take the stand if he so wishes. And it is this freedom of choice that the *Brooks* Court finds at the core of the Fifth

Amendment privilege. For these reasons, this Court does not find that CIPA's pre-disclosure requirements violate Mr. Hitselberger's Fifth Amendment right to remain silent.

**B. CIPA does not violate Mr. Hitselberger's Fifth and Sixth Amendment right to testify on his own behalf**

Mr. Hitselberger contends that the notice and hearing requirements of CIPA Sections 5 and 6 violate his Fifth and Sixth Amendment privilege to testify on his own behalf at trial. Mr. Hitselberger argues that if he chooses not to comply with the notice requirements, CIPA allows the information to be excluded at trial and thus unconstitutionally denies Mr. Histelberger the right to testify on his own behalf. In sum, Mr. Hitselberger argues that CIPA forces him to either make a costly pre-trial decision, or forego his constitutional right to testify at trial.

While the Fifth Amendment guarantees criminal defendants a choice to remain silent, the Fifth and Sixth Amendments guarantee defendants "an opportunity to be heard" in his or her own defense, if they so choose. *In Re Oliver*, 33 U.S. 257, 273 (1948). In fact, the right to testify is implicit in, and complements, the defendant's right to remain silent. As the Supreme Court stated in *Harris v. New York*, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." 401 U.S. 222, 225 (1971).

Even so, the defendant's "right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas,* 483 U.S. 44, 55 (1987) (internal quotations omitted). Thus, this court must evaluate whether the interests served by CIPA justify the limitations (if any) on the defendant's constitutional right to testify.

There are two reasons this Court finds no constitutional violation here. First, CIPA itself does not preclude the defendant from testifying in his own defense. "Significantly, CIPA does not authorize the preclusion of [defendant's] testimony if he fails to comply with the Section 5(a) notice requirement; rather it merely authorizes the Court to forbid testimony about classified information not disclosed in a section 5(a) notice" hearing. *Ivy*, 1993 WL 316215 at *3 (E.D. Pa 1993); *See also Drake*, 818 F.Supp.2d at 913-914 (finding that the only result from a failure to comply with the Section 5(a) notice requirements is that the classified information could potentially be precluded at trial); *Lee*, 90 F.Supp.2d at 1327 (same); *Pointdexter* 725 F.Supp. at 34 (same). CIPA only determines the admissibility of evidence, "so that classified information is not inadvertently disclosed during open proceedings." *Lee*, 90 F.Supp.2d at 1327; *See also Hashmi,* 621 F.Supp.2d at 80 ("The statute is a procedural tool allowing a court to make rulings on admissibility and relevance before the commencement of trial."). If the evidence is deemed admissible, the defendant may still choose whether to present the evidence during trial. And regardless of whether the evidence is presented at trial, the defendant may still choose whether to exercise his right to testify at trial.

Second, the government has a significant interest in requiring Section 5 and 6 disclosures prior to trial – namely the national security of the United States and its citizens. CIPA "permit[s] the government to ascertain the potential damage to national security of proceeding with a given prosecution before trial." S. Rep. No. 823, 96th Cong., 2d Sess. 1 (1980); *See also Drake*, 818 F.Supp.2d at 913 (finding the *possible* preclusion of undisclosed classified information to be outweighed by the government's regulatory interest in protecting that information); *Hashmi*, 621 F.Supp.2d at 81 (same); *Lee*, 90 F.Supp.2d at 1328 ("it is obvious and unarguable that no governmental interest is more compelling than the security of the Nation") (internal quotations

omitted); *Pointdexter*, 725 F.Supp. at 34 (same). And Congress has carefully balanced this interest against a defendant's interest in a fair and accurate trial. Unlike in *Rock*, where the Court struck down a state rule *categorically* disqualifying posthypnosis testimony, *Rock,* 483 U.S. at 57, the determination here is individually tailored and requires the court to weigh both the defendant's right to a fair trial and the state's interest in national security.

Section 6(a) hearings require the Court, by definition, to make an individualized determination about each piece of evidence. 18 U.S.C. App III. Section 6(a) ("As to each item of classified information, the court shall set forth in writing the basis for its determination."). And such a hearing is only conducted *after* the defendant is given notice of the evidence at issue, and is given a fair opportunity to prepare for the hearing. 18 U.S.C. App III. Section 6(b)(1) ("Before any hearing is conducted…the United States shall provide the defendant with notice of the classified information that is at issue."). CIPA thus serves national security interests by "providing a mechanism for protecting both the unnecessary disclosure of sensitive information and by helping to ensure that those with significant access to such information will not escape the sanctions of the law applicable to others by use of the graymail route." *Pointdexter*, 725 F.Supp. at 34. Because security concerns are a legitimate state interest, and because the defendant is not foreclosed from taking the stand in his defense, this Court finds no violation of Mr. Hitselberger's Fifth and Sixth Amendment right to testify on his own behalf.

**C. CIPA does not violate Mr. Hitselberger's Sixth Amendment right to effective cross-examination under the Confrontation Clause**

Mr. Hitselberger next argues that Sections 5 and 6 of CIPA violate his Sixth Amendment right to effective cross-examination under the Confrontation Clause. Specifically, defendant contends that CIPA's pre-trial disclosure requirement gives the prosecution advance notice of the

9

defense strategy, and allows the prosecution to manipulate the witness list in a manner favorable to the government. Def's Mot. for Decl. that Sections 5 and 6 of Classified Information Procedures Act are Unconstitutional, March 1, 2013, ECF No. 36, at 12 (hereinafter "Def's Mot."). Defendant argues, additionally, that advance disclosures preclude effective cross-examination by eliminating defense counsel's element of surprise when questioning adverse witnesses. *Id.*

The "Confrontation Clause of the Sixth Amendment guarantees a criminal defendant an opportunity for effective cross-examination." *U.S. v. Ayala,* 601 F.3d 256, 273 (4th Cir. 2010) (citing *Davis v. Alaska,* 415 U.S. 308, 315-16 (1974)). The clause does not, however, confer the right to cross-examine "in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "District courts thus retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination." *Ayala,* 601 F.3d at 273. This court thus carefully considers Mr. Hitselberger's Confrontation Clause claim to determine whether CIPA's pre-trial disclosure requirement is merely a "reasonable limit" on cross-examination, or if it rises to a constitutional violation. There are several reasons why the Confrontation Clause is not violated here.

First, CIPA disclosures are not burdensome enough on the defendant's ability to cross-examine witnesses to constitute a violation of the Confrontation Clause. As noted in *United States v. Drake,* "CIPA does not mandate that [the defendant] reveal his trial strategy, but only that he identify whatever classified information he plans to use." 818 F.Supp.2d 909, 914 (D.Md. 2011); *See also Lee*, 90 F.Supp.2d at 1328 ("CIPA does not require that the defense reveal its plan of cross-examination…what questions…counsel will ask, in which order, and to which witnesses."); *Ivy,* 1993 WL 316215 at *4; *Pointdexter*, 725 F.Supp. at 34 . This merely

amounts to a "tactical disadvantage" *Lee,* 90 F.Supp.2d. at 1328, not an infringement of Mr. Hitselberger's Confrontation Clause rights.

Second, Sections 5 and 6 of CIPA are unlike the statute in *Davis v. Alaska,* where the defendant was *fully* foreclosed from cross-examining an adverse witness. 415 U.S. 308 (1974) Mr. Hitselberger recognizes that that is not the case here. He instead contends that CIPA disclosures make the defense's cross-examination less effective because the State will have advance access to key defense evidence and strategy. Def's Mot., ECF No. 36, at 12-13. This is not sufficient to constitute a constitutional violation. The Supreme Court has held, in the context of alibi defenses, that the defendant does not retain a constitutional right to "surprise the State" with evidence that they were already planning to divulge at trial. *Williams v. Florida,* 399 U.S. 78 (1970); *See also Drake*, 818 F.Supp.2d at 914 ("[T]he Confrontation clause does not guarantee the right to undiminished surprise with respect to cross-examination of prosecutorial witnesses."); *Lee*, 90 F.Supp.2d at 1328 (same); *Ivy,* 1993 WL 316215 at *6-7 (same); *Pointdexter,* 725 F.Supp. at 34 (rejecting defendant's theory that the Sixth Amendment guaranteed him an "unqualified right to undiminished surprise with respect to cross-examination"). As previously discussed, the Court has upheld various rules of procedure requiring defendants to disclose evidence or strategy to the State prior to the criminal trial. *See supra* subsection A, at *5; *See also, Pointdexter*, 725 F. Supp. at 33 (enumerating various defense pre-disclosure provisions found to be constitutional).

Finally, the state's interest in protecting classified information from the public's eyes is a significant and important interest. *See Drake*, 818 F.Supp.2d at 913 (finding the *possible* preclusion of undisclosed classified information to be outweighed by the government's regulatory interest in protecting that information); *Hashmi*, 621 F.Supp.2d at 81 (same); *Lee*, 90

11

F.Supp.2d at 1328 ("it is obvious and unarguable that no governmental interest is more compelling than the national security of the Nation") (internal quotations omitted); *Pointdexter*, 725 F. Supp. at 31-32 (describing how "graymail" had impaired the government's ability to effectively prosecute individuals endangering national security). Moreover, as discussed in subsection B, Congress has already carefully balanced both the State's and defendant's interests in enacting CIPA, requiring the disclosure of only classified information likely to be disclosed at trial, and allowing the district court significant leeway to make a case by case determination on the admissibility of that evidence. For these reasons, this Court finds no violation of Mr. Hitselberger's Sixth Amendment right to effective cross-examination.

**D. CIPA does not violate Mr. Hitselberger's Due Process rights under the Fifth Amendment**

Lastly, Mr. Hitselberger argues that CIPA's pre-trial disclosure requirements burden the defendant but do not reciprocally require the government to disclose to the defendant any classified information the government is likely to disclose at trial. Mr. Hitselberger argues that this prevents him from securing a fair trial and thus violates his due process rights under the Fifth Amendment. This is incorrect. CIPA's burdens are not one-sided.

In *Wardius v. Oregon*, the Supreme Court held that liberal systems of discovery generally comported with the protections afforded to defendants under the Due Process Clause because allowing both parties the "maximum possible amount of information with which to prepare their cases…reduce[s]…surprise at trial" and would best serve the "ends of justice." 412 U.S. 470, 472 - 474 (1973). The Court however places one important limitation on broad discovery rules: criminal defendants must be afforded reciprocal discovery rights. *Id.* at 472. In *Wardius,* the Court found that an Oregon rule *permitting* the prosecution to provide the names of rebuttal

witnesses to the defendant, but not requiring it, violated the Due Process Clause, by creating an imbalance of forces between the accuser and the accused. 412 U.S. 470, 474.

Unlike the Oregon rule at issue in *Wardius*, CIPA *mandates* reciprocal discovery and thus does not violate the Due Process Clause. In fact, Section 6(f), entitled "Reciprocity," requires that the United States provide the defendant "with the information it expects to use to rebut the classified information [disclosed pursuant to a Section 6(a) hearing]." 18 U.S.C. App III. Section 6 (f). And this is not a one-time disclosure requirement. CIPA places a continuing duty on the United States to disclose such rebuttal information as it becomes relevant. *Id; See also Drake*, 818 F.Supp.2d at 915 ("CIPA…narrows the factual issues at stake and authorizes this Court to impose upon the Government a continuing duty to disclose rebuttal evidence or have such evidence excluded."). In essence, Section 6 requires the government to "reveal details of its case so as to give the defense fair notice to prepare for the hearing." *United States v. Lee*, 90 F.Supp.2d at 1329; *See also Drake*, 818 F.Supp.2d at 913 (finding that CIPA placed sufficient reciprocal burdens on the government and so the overall balance of discovery was not tipped against the defendant); *Ivy,* 1993 WL 316215 at *5 (same); *Pointdexter*, 725 F.Supp. at 34 ("[T]he CIPA burdens are not one-sided, but they are carefully balanced, and there is therefore no basis for a due process complaint.").

Section 5 too requires the government to "produce all discoverable materials before the defense is required to file a §5(a) notice." *Lee*, 90 F.Supp.2d at 1329. "Specifically, the government must provide the defense with any portions of any material it may use to establish the 'national defense' element of any charges against [the defendant]." *Id.* And Sections 5 and 6's specific reciprocity requirements are supplemented by other general discovery procedures

13

under the Federal Rules of Criminal Procedure and the United States' discovery obligations under *Brady v. Maryland,* 373 U.S. 83 (1963).

Moreover, the United States alleges, and Mr. Hitselberger does not challenge, that the defense has already been provided with significant discovery, including every document the Government subpoenaed through the grand jury, investigative reports, eyewitness statements and underlying agent notes. Def's Mot., ECF No. 36 at 7. Given the Government's significant compliance with discovery, and the numerous provisions obligating the Government to continue to provide defense counsel with documents in its possession, this Court finds no violation of Mr. Hitselberger's due process rights.

## IV. CONCLUSION

For the foregoing reasons, this court DENIES defendant's motion for declaration that Sections 5 and 6 of the Classified Information Procedures Act are unconstitutional. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 6, 2013                                RUDOLPH CONTRERAS
                                                       United States District Judge