# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  12-231 (RC) |
| | : | |
| v. | : | |
| | : | |
| JAMES F. HITSELBERGER, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

The government concurs with defendant's request for a time-served sentence and defers to the Court as to whether a period of supervised release and a fined are appropriate.  In light of the time Mr. Hitselberger spent in pre-trial detention and the restrictions on his liberty while in home detention, along with a balancing of the sentencing factors set forth in 18 U.S.C. § 3553(a), the government does not believe it could in good faith ask for further punishment.

The government could end its memorandum here.  However, it is important for the Court to be aware of the seriousness of Mr. Hitselberger's conduct and the continued strength of the government's case.   The government permitted Mr. Hitselberger to plead guilty to the misdemeanor offense of violating 18 U.S.C. § 1924 in an exercise of its discretion due to the passage of time and other changed circumstances.  He has paid a price for his conduct, and that price is now sufficient for the crime he has admitted committing.

**Background**

At this point, the Court is very familiar with the underlying facts of this prosecution, both from the motions hearings and the parties' accompanying pleadings and from the Statement of the Offense.  On April 11, 2012, while employed as linguist at the Naval Support Activity (NSA) Bahrain, Mr. Hitselberger printed two intelligence reports marked <span style="color:red">**SECRET**</span> in bold and red headers and footers and secreted those reports inside a dictionary, which he placed in a backpack before leaving the Restricted Access Area (RAA) in which he had been working.[1]  When confronted by two soldiers after leaving the building housing the RAA, Mr. Hitselberger acceded to their demands to relinquish the two classified documents he had removed.  If the case had gone to trial, the government would have introduced evidence that, before printing the classified documents, Mr. Hitselberger had first tried unsuccessfully to forward one of the reports from his account on the classified network to his gmail account.

A subsequent search of Mr. Hitselberger's quarters later that same day by agents of the Naval Criminal Investigative Service (NCIS) pursuant to a "Command Authorization for Search and Seizure" led to the discovery of one page of JSOTF SITREP 72 (SITREP 72) from March 8, 2012.  This SITREP is five pages long and has **SECRET** in red in the headers and footers.  However, the classification markings on the page the agents found had been cut off.

NCIS agents conducted two *Mirandized* interviews of Mr. Hitselberger on April 11 and 12, 2012.  The Court has found that Mr. Hitselberger made knowing and intelligent waivers of his *Miranda* rights and that the interviews were voluntary.  During the interviews, Mr.

---

[1]   Hitselberger's particular assignment at NSA Bahrain was  to work for the Joint Special Operations Task Force (JSOTF) Naval Special Warfare Unit Three (NSWU-3).  NSWU-3 conducts such missions as unconventional warfare, direct action, combating terrorism, and special reconnaissance.  NSWU-3 relied on Hitselberger's expertise in the Arabic language and sent raw data to him regularly for translation.  Through this work, Hitselberger obtained intimate knowledge of sensitive source operations, including the true names and addresses of sources.  The documents Hitselberger removed from the RAA were a Joint Special Operations Task Force Situation Report (SITREP) dated April 11, 2012 (SITREP 104) and a Navy Central Command (NAVCENT) Regional Analysis dated April 9, 2012.

Hitselberger claimed that he was wearing a special pair of reading glasses while in the RAA that prevented him from seeing the portions of the documents with the classification markings. He also stated that he never had been trained on the proper handling and storage of classified information. The first claim is patently absurd. With respect to the second claim, the government would have introduced evidence at trial that Mr. Hitselberger received training concerning the treatment of classified information both before leaving for Bahrain and during his tenure at NSA Bahrain. In addition, a security officer gave weekly updates to the members of NSWU-3 on their responsibilities when entrusted with classified materials. The security officer would have testified that Mr. Hitselberger regularly attended these briefings.

Two days after attempting to take the classified documents, Mr. Hitselbeger was directed to leave Bahrain. He received a one-way ticket back to the United States. During a layover in Frankfurt, Germany, Mr. Hitselberger left the airport and began traversing Europe. Although the Court later found that Mr. Hitselberger was not a flight risk because, among other things, eight months later he was willing to go to a U.S. military base in Kuwait to retrieve his belongings, the government believes that, in April 2012, he panicked and fled. One piece of information that the government later learned – and which it did not have when the Court had the bond review hearing – is that, on the ride to the airport in Bahrain, one of the agents told Mr. Hitselberger that he likely would face prosecution upon his return to the United States.

Further investigation of Mr. Hitselberger revealed that he had established a collection at the Hoover Institution Archives at Stanford University. An examination of the collection revealed that he had transferred classified materials to it that he had acquired during his time as a linguist in Iraq between 2004 and 2007 and that he had recently sent there a Bahrain Situation Update dated February 13, 2012, which was classified **SECRET.** The government found

communications between Mr. Hitselberger in Bahrain and the Archives concerning the delivery of items from NSA Bahrain, which included the Situation Update.

### Argument

It is important to note that the government's case against Mr. Hitselberger did not collapse.  The Court denied the defendant's motions to suppress physical items and to suppress his statements.[2]  Moreover, in several ways, the government's case became stronger than what it had been when the charges were first obtained.  The government found new witnesses and new information.  It had secured experts who would have testified that the information in the classified materials underlying the charges was national defense information.

When Mr. Hitselberger failed to return to the United States, there was legitimate cause for concern.  By virtue of his work for NSWU-3, Mr. Hitselberger was aware of very sensitive information concerning the intelligence sources and methods of that military unit.[3]  The information Mr. Hitselberger could have compromised through his acts of illegal retention was also highly sensitive.[4]  The documents described above revealed the location and activities of military units and leaders in a volatile and often dangerous part of the world.  They further revealed gaps in U.S. intelligence concerning aspects of the situation of Bahrain, which was then going through a period of turmoil.  Last, they would have shown hostile forces what the United States' intelligence priorities were in the region.

Mr. Hitselberger was someone who never should have had a security clearance.  What he did on April 11, 2012, was not a one-time occurrence.  One consequence of Mr. Hitselberger's

---

[2]   The Court did exclude several pieces of evidence the government sought to introduce pursuant to Rule 404(b), Fed. R. Evid.  Notwithstanding some comments by government counsel at oral argument concerning the significance of this evidence, the decision whether or not to use the evidence was always a strategic one that the government intended to make at trial.

[3]   The government's investigation did lead it to conclude that Mr. Hitselberger had not acted with the intent to aid a foreign power.

[4]   Before the sentencing, the government will provide the Court with the full, unredacted versions of the classified materials through the Classified Information Security Officer.

plea agreement is that he now will never have a security clearance again and that he will never have access to the sorts of materials he previously compromised.

## Conclusion

As a matter of discretion, the government agreed to Mr. Hitselberger's request to plead guilty to a violation of 18 U.S.C. § 1924.  Through his pretrial detention and the subsequent restrictions on his liberty, Mr. Hitselberger has now paid the appropriate price for his violation of that statute.  The Court should sentence him accordingly.

Respectfully submitted

RONALD C. MACHEN JR.
United States Attorney


_____/s/_____
JAY I. BRATT
Assistant United States Attorney
National Security Section
555 4th Street, NW, 11th Floor
Washington, D.C.  20530
(202) 252-7789
Illinois Bar No. 6187361
jay.bratt2@usdoj.gov



DEBORAH CURTIS
Trial Attorney
Counterespionage Section
National Security Division
U.S. Department of Justice
600 E Street, NW, 10th Floor
Washington, D.C.  20530
(202) 233-2113
deborah.curtis@usdoj.gov

**<u>Certificate of Service</u>**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Sentencing Memorandum by electronic means on Mary Petras, Esq., counsel for defendant, this 26th day of June, 2014.

_____/s/_____<br>
Jay I. Bratt