UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :

v.                :       12-CR-231 (RC)

JAMES F. HITSELBERGER       :

**DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**

In Government's Sentencing Memorandum [Dkt. #105], the government concurs with Mr. Hitselberger's request for time served and defers to the Court with regard to imposition of supervised release or a fine, recognizing that it would not be appropriate to ask for further punishment under the circumstances of this case.  Although the parties are in agreement, counsel submits the following in reply to the Government's Sentencing Memorandum, in order to ensure that the record in this matter is clear with regard to Mr. Hitselberger's conduct.

The government notes that it will submit the classified documents at issue in this matter to the Court prior to the sentencing, and Mr. Hitselberger respectfully requests that the Court review those documents.  The Court will find that portions of the documents were unclassified and much of the classified information in the documents obviously was derived from non-classified open sources.  In addition, the "location and activities of military units and leaders," Gov't Memo. at 4, were vague references to general activities conducted openly.   As such, while the documents may have the importance the government attributes to them, that is not clear on the face of the documents.  In other words, the potential danger from the disclosure of these documents was not obvious.  This does not, of course, mean that the documents did not

need to be handled in strict compliance with the procedures for handling classified materials, and Mr. Hitselberger recognizes that he failed to do so.  However, at the time of the offense, Mr. Hitselberger did not recognize the harm that could result from mishandling the documents and certainly never intended for the documents to be disclosed to unauthorized individuals.

The government inexplicably continues to characterize Mr. Hitselberger's actions after he was fired from his position in Bahrain as flight.  *See* Gov't Memo. at 3.  Mr. Hitselberger never attempted to evade or avoid government authorities in any way, shape or form.  At the time he began traveling in Europe, Mr. Hitselberger had been fired from his job in Bahrain and had no obligation to return to the United States.  He spent the next several months traveling in Europe because he has friends there, he speaks several languages, he likes learning new languages, and he likes to travel.  There was absolutely nothing wrong with or nefarious about his travel.  Although he understood that he would be investigated for his actions in Bahrain, he had no idea how long such an investigation would take or if (or when) he would be charged with any offense.  In fact, the government did not file a criminal complaint against Mr. Hitselberger until August 6, 2012, almost four months after the incident occurred in Bahrain.  Because he had provided his contact information to government agents, Mr. Hitselberger had every reason to believe that they would contact him if authorities wanted him to answer to criminal charges or wanted to speak to him for any other reason.  As the Court previously found, Mr. Hitselberger was not a fugitive and did not attempt to evade prosecution.  *See* Memorandum Opinion, Dkt. # 19 at 7 (Dec. 20, 2012).  As the previously submitted character letters demonstrate, Mr. Hitselberger is not a person who would evade his responsibilities and the record should be clear on that fact, the government's unsubstantiated characterization notwithstanding.

The government refers to several reports found at the Hoover Institution and asserts that Mr. Hitselberger transferred classified documents to the Hoover Institution when he was in Iraq. *See* Gov't Memo. at 3.  He did not.  Notably, the government did "not intend to prove that the[se] reports contained national defense information, nor that they were actually and properly classified at the time Mr. Hitselberger allegedly sent them to the Hoover Institution." *See* Memorandum Opinion Denying Defendant's Motions to Suppress Tangible Evidence Seized, Denying Defendant's Motion to Dismiss Counts Four, Five and Six of the Superseding Indictment, and Granting in Part and Denying in Part the Government's Motion for 404() Evidence, Dkt. # 87 at 30 (Mar. 5, 2014).  As the evidence at the motions hearing demonstrated, the documents were found in a public area in Iraq, leading to the inference that they were no longer classified at the time they were found or at least that Mr. Hitselberger carelessly assumed so. *Id*.

Over many years, Mr. Hitselberger has sent numerous materials to the Hoover Institution, beginning with materials he collected in Iran, continuing with materials from Iraq and then materials from Bahrain.  Almost all of these materials were collected from public sources -- newspapers, magazines, and pamphlets.  Among the approximately 18 boxes of materials within his collection at the Hoover Institution, the government reports finding four documents that the government claims should not have been sent.  Even if this is true, the evidence demonstrates that Mr. Hitselberger never intended to disclose classified information.  Rather, as a former researcher and a person with an intellectual interest in foreign languages and affairs, he sent these materials to the Hoover Institution for preservation and possible use by scholars.  Moreover, even if he mistakenly sent classified materials, he would not be the only person to have done so.  In

fact, for decades, the Hoover Institution has been permitted to maintain a secured facility for classified information for the sole purpose of maintaining classified materials included within donations the Institution receives from private individuals, primarily former government officials.

Finally, the government claims its case "did not collapse."[1] At a minimum, the evidence demonstrates that the government significantly overcharged the case, and the guilty plea to a misdemeanor not only was the appropriate result, but also demonstrates how the offense should have been charged from the beginning. The penalty that Mr. Hitselberger has now served -- including two months at the D.C. Jail, eight months of home confinement, and eight more months of electronic monitoring in Michigan -- was greater than what was necessary to serve the purposes of sentencing.[2] For this reason, a sentence of time served with no supervised release or fine should be imposed.

---

[1] The government makes no mention of the Court's finding that, with regard to three of the six charged felony offenses (Counts Four, Five and Six, charging violations of 18 U.S.C. § 2071(a)), the government was unlikely to be able to prove the charged offenses. *See Id.* at 26-27 ("[I]t is difficult to see how the government could prove that Mr. Hitselberger obliterated information from the public record in violation of 18 U.S.C. § 2071(a) by printing electronically stored documents and then taking the print-outs.").

[2] As the government notes, the plea agreement required Mr. Hitselberger to agree that he will never apply for a security clearance. This alone is a significant penalty, limiting his future employment opportunities forever. And it is an unusually harsh penalty. *See United States v. Berger*, 05-mj-175 (DAR), Dkt. #5 at 4 (plea agreement prohibiting defendant from applying for security clearance for three years).

The government's gratuitous comment that Mr. Hitselberger "never should have had a security clearance" is unsupported by the evidence. As discussed in Defendant's Sentencing Memorandum, Mr. Hitselberger honorably served as a cleared interpreter in Iraq, at great personal risk.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500 ext. 109